## CIRCUIT COURT OF HENRICO COUNTY

Lynda F. Hale

v.

Ralph W. Hale

June 26, 1990

Case No. CH89000091-00

By JUDGE JAMES E. KULP

This matter is before the Court to determine grounds for divorce, equitable distribution, spousal support, and attorneys' fees. The Court heard evidence *ore tenus*, received exhibits, and heard argument from counsel. The Court now having reviewed the evidence and legal authorities bearing on the issues renders this opinion.

I. *Grounds for Divorce*

The plaintiff, Lynda Hale, filed a Bill of Complaint seeking a divorce on the alternative grounds of cruelty or constructive desertion. The defendant, Ralph Hale, filed an Answer denying the allegations of cruelty and constructive desertion and filed a Cross-Bill seeking a divorce on the grounds of cruelty or desertion.

At the hearing plaintiff testified that she had known defendant about ten years, and they had dated about three years prior to the marriage on April 4, 1986, in Gaithersburg, Maryland. She testified that problems became apparent on their wedding night. At first, defendant would punish her for perceived wrongs by taking away privileges such

as her automobile and jewelry. Within six months of the marriage, plaintiff paints a picture of a reign of terror consisting of physical violence and mental abuse. Plaintiff testified to being beaten repeatedly by defendant who would strike her with his closed fist. Plaintiff said that defendant would throw things at her, and when she was pregnant with their first child, Katelyn, the defendant kicked her out of bed, pushed her face into a pillow, hit her with his fist, and kicked her in the stomach. Plaintiff further testified that when she returned home after giving birth on January 3, 1988, by Caesarean section, defendant kicked her several times on her incision.

On June 15, 1988, the parties moved to Richmond, and within a month plaintiff became pregnant with the parties' second child. The parties continued to argue, and plaintiff stated that defendant threatened to take away Katelyn. On October 24, 1988, plaintiff instructed defendant to leave the marital home.

The plaintiff's mother, Julia Fitzgerald, testified that she had known defendant since 1984, that he was generous with gifts to plaintiff, and that she had never seen defendant angry or physical toward plaintiff. Mrs. Fitzgerald testified that when the parties were first married, she lived in the same apartment complex and saw them nearly every day. In March, 1988, Mrs. Fitzgerald testified that she saw a mark on the left side of plaintiff's face and further had seen some fingerprints on plaintiff's arm on one occasion. Mrs. Fitzgerald testified that plaintiff had never mentioned any abuse until March, 1988, and that she never discussed this with the defendant.

The plaintiff's brother also testified that he had known the defendant before the marriage to his sister and used to see the parties about twice a month. He testified that he never saw any evidence that plaintiff was being beaten, although he did see a bruise on plaintiff's upper arm after the parties moved to Richmond. He further testified that on October 24, 1988, he received a call from his sister and went to the parties' home. He observed the defendant and Katelyn in the car and plaintiff sitting on the rear of the car. As defendant started forward, plaintiff fell to the ground. Both parties were using abusive language toward the other.

Helen Hale, the defendant's mother, testified that she saw the parties frequently before and after the marriage. She testified that while the parties argued, she never observed evidence of physical abuse. After the parties had moved to Richmond, she saw fingernail marks on defendant's arm and a small bruise on plaintiff's arm. She further testified that plaintiff had never mentioned anything to her about physical abuse.

The defendant admitted that the parties engaged in arguments but denied that he had ever physically abused plaintiff. He also testified that the plaintiff never sought any medical treatment for alleged abuse.

The grounds for divorce must be proved by full, clear, and adequate evidence. *Brooks v. Brooks*, 200 Va. 530 (1959). It is well established that courts may not sever marriages unless the evidence establishes the misconduct of one of the parties to be very serious and such as amounts to extreme cruelty, entirely subversive of the family relations rendering the association intolerable. *Zinkhan v. Zinkhan*, 2 Va. App. 200 (1986).

The Court finds that plaintiff's evidence is insufficient to establish cruelty or constructive desertion. While plaintiff claims that she was physically beaten and kicked unremittingly from six months after the marriage, her mother, who saw plaintiff almost daily, never saw any evidence of physical abuse until she saw a mark on plaintiff's face in March, 1988. It is inconceivable to the Court that if plaintiff was the recipient of such constant beatings, no one would have noticed the effects for almost two years. Nor does it stand to reason that plaintiff, who has two and a half years of college, would undertake to have a second child in light of what she claims defendant did to her during and after her first pregnancy.

The record reflects a broken marriage. It was a marriage filled with arguments, and at least as to plaintiff, it was an unhappy marriage. The law requires, however, that parties submit to the ordinary consequences of human infirmities and unwise selections. For the reasons stated, the Court finds that plaintiff has failed to prove fault grounds for a divorce.

Likewise, the Court finds that defendant has failed to prove fault grounds for divorce. Defendant presented no evidence that would support a claim of cruelty by plain-

tiff. The evidence established that plaintiff told defendant to leave the marital home on October 24, 1988. Such evidence in isolation is insufficient to grant a divorce. *See Rowand v. Rowand*, 215 Va. 344 (1974); *Brawand v. Brawand*, 1 Va. App. 305 (1986).

While the Court has found that plaintiff's evidence is insufficient to establish cruelty sufficient to be a grounds for divorce, the Court finds that plaintiff could reasonably believe that due to the marital strife, her health and well being could be endangered if the defendant remained in the marital home. In such a case, the plaintiff had no intention to desert the defendant, but her intent was to shield herself from the cause of such concern. *See Brawand v. Brawand, supra.* The Court finds the evidence insufficient to prove that plaintiff deserted the defendant.

The evidence does support, however, that the parties have lived separate and apart, without any cohabitation and without interruption, for more than one year. The Court will grant plaintiff a divorce on this ground upon the filing of a motion pursuant to § 20-121.02.

## II. *Spousal Support*

The plaintiff has requested the Court to award her spousal support. The evidence established that plaintiff is employed and is receiving an annual salary in the amount of $32,400.00. In 1989 plaintiff received a bonus of $8,000.00, but it is uncertain whether this will continue. The defendant's earnings amount of $35,000.00. On October 10, 1989, the Court ordered defendant to pay child support in the amount of $888.00 per month and at the same time eliminated temporary spousal support to plaintiff. The income and needs of the parties were the same in October, 1989, as they are at this time. The temporary spousal support had been ordered on March 27, 1989, due to the fact that plaintiff would not be receiving her salary while she was on leave to have her second child.

Based upon the evidence and the criteria set forth in § 20-107.1, the Court finds no basis upon which to award spousal support to plaintiff. Pursuant to *Bacon v. Bacon*, 3 Va. App. 484 (1986), the Court will reserve

plaintiff's right to receive spousal support in the event of a change of circumstances.

III. *Equitable Distribution*

The parties have provided the Court with several documents on which they have listed all of their property and the value of such property. As to most of the property, the parties have agreed to its designation as marital or separate. On several pieces, however, the parties have disagreed as to the proper designation and have submitted these to the Court for determination.

The largest piece of property about which there is disagreement is the marital home. The parties have agreed that the home was purchased during the marriage, that it has a fair market value of $125,000.00, a mortgage balance of $103,843.00, leaving an equity to the parties in the amount of $21,157.00. The parties agree that the home would be marital property under the definition in Section 20-107.3, but plaintiff is claiming it to be separate property pursuant to a written agreement between the parties.

At the hearing plaintiff introduced into evidence a piece of paper dated June 15, 1989, which provides:

It is hereby agreed and understood that I have relinguished [sic] all rights to the real property located at 10609 Argonne Drive, Glen Allen, Virginia, to Mrs. Lynda F. Hale. To validate this agreement, Lynda must attend marital counseling 4 times to be verified by the counselor.

Love,
Ralph Hale, III

*See*, plaintiff's Exhibit 1.

The evidence from plaintiff is that the home was purchased on June 15, 1988. Plaintiff testified that the defendant wanted to work on the marriage, but she would not go into counseling because she believed she was being manipulated by the defendant. The defendant agreed to sign over the marital home to plaintiff if she would agree to work on the marriage. Plaintiff further

testified that she did attend four counseling sessions with Dr. Griffin and one session with Dr. Butnik. Each session lasted for one hour with the doctors and three hours with each other.

The defendant testified that he wrote the document in question in an attempt to save the marriage and that the plaintiff wanted the agreement. Defendant further testified that at the conclusion of the four counseling sessions, the plaintiff refused to engage in any further counseling.

In support of her position that the marital home is her separate property, plaintiff relies upon *Wagner v. Wagner*, 4 Va. App. 397 (1987); and *Westbrook v. Westbrook*, 5 Va. App. 446 (1988). *Wagner* is not dispositive of the issue before the Court. It merely stands for the proposition that under § 20-107.3 only the voluntary conveyance by a party, subject to the approval of the Court, can effect a transfer of title to jointly owned property.

*Westbrook* is more on point. There the parties agreed that the wife would sell her home in Atlanta and move to Hanover County to reside with her husband. The parties planned to erect a home on some land which the husband had purchased prior to the marriage. The parties signed an application for a construction loan in the amount of $150,000.00. The loan agreement contained a statement that the parcel of land would be held in the names of the parties as tenants by the entireties. The lending institution would not release any money unless the wife signed the construction money note and deed of trust securing the note. The wife refused to sign the papers until an agreement was made concerning ownership of the real estate. After discussing the matter, the parties agreed to enter into an agreement. The agreement was written by the husband in which he agreed that since his wife was obligating herself for the loan, they were to own the house together. After this agreement was signed, the wife signed the construction money note and deed of trust upon the real estate in the amount of $150,000.00, and the loan was secured.

Upon this set of facts, the Court of Appeals found that the written agreement between the parties changed the status of the real property from separate to marital property. The Court of Appeals found that the writing

contained all of the essential elements of a valid contract: competent parties, legal subject matter, valuable consideration, and mutual consent.

In the case before this Court, plaintiff urges the Court to follow *Westbrook* and find that the writing dated June 15, 1989 (Plaintiff's Exhibit 1), is a valid contract between the parties changing the status of the marital home from marital property to the separate property of the plaintiff. For the reasons to follow, the Court finds *Westbrook* inapposite.

This Court is of the opinion that the factual pattern in this case more closely resembles that in *Derby v. Derby*, 8 Va. App. 19 (1989). In *Derby* the parties through their attorneys had prepared a separation agreement by which the property was to be divided equally between the parties. In the absence of the attorneys, the wife approached her husband, and after a brief discussion, the paragraph providing for equal division of property was stricken, and the wife inserted that the husband agreed to relinquish his portion of certain real estate and to sign over ownership of the property to the wife. This change in the agreement allowed the wife to become the sole owner of the bulk of the parties' marital property. The evidence also established that the wife played upon her husband's weakness and his desire to reconcile in gaining her advantage. Upon this evidence the Court of Appeals found the agreement unconscionable and thus invalid.

In the present case the Court finds that the defendant was making an effort to reconcile the parties' differences, and he wanted to pursue counseling as a means to effectuate this purpose. The Court further finds that plaintiff did not desire any reconciliation. The reasonable inference arising from the evidence is that plaintiff never intended to participate in any meaningful way in counseling, for once the four sessions required by the agreement were complete, she refused to participate any further. The Court finds that plaintiff wanted the agreement not as a means to save her marriage, but rather to secure for herself the bulk of the parties' marital property. In short, the plaintiff was not being manipulated by the defendant, but she was using his desire to reconcile to gain an advantage for herself. The agreement would grant plaintiff the entire $21,157.00 equity in the marital

home, whereas the remaining marital property on which the parties agree has a value of $5,794.00.

The Court recognizes that it has no authority to relieve a person of the consequences of a contract merely because it was unwise. But where the inadequacy of the bargain is such as to shock the conscience, courts of equity must be willing to step in to eliminate unconscionable results. *Cf. Owens v. Owens*, 196 Va. 966 (1955). Based upon the evidence and the reasonable inferences, the Court finds that the agreement of June 15, 1989, is invalid because it is unconscionable.

The parties also disagree over the designation of a 1982 Datsun 280 ZX Turbo. This vehicle was purchased by Mr. Hale before the marriage and is titled in his name. The evidence establishes that a lien on this automobile was paid off during the marriage with marital funds. The evidence fails to establish the amount of the lien which was paid off with marital funds. The evidence further establishes that repairs were made to this automobile during the marriage which were paid for with marital funds.

Based upon the evidence, the Court finds that Mr. Hale failed to segregate this vehicle as separate property and instead commingled it with marital property. This commingling transmuted this vehicle from the separate property of Mr. Hale into marital property of the parties. *See Smoot v. Smoot*, 233 Va. 435 (1987); *Lassen v. Lassen*, 8 Va. App. 502 (1989).

Further the parties cannot agree on the designation of a diamond engagement ring. The parties agree that this ring was purchased some two months before the parties were married. The Court infers that Mr. Hale made a gift of this ring to Mrs. Hale in anticipation of marriage. No evidence was presented at the hearing which would indicate a commingling of this property with marital property. *Cf. Price v. Price*, 4 Va. App. 224 (1987). Since the burden would have rested upon Mr. Hale to present evidence on this issue, his failure to do so prevents him from prevailing on the issue. *Bowers v. Bowers*, 4 Va. App. 610 (1987). Accordingly, the Court finds that the diamond engagement ring is the separate property of Mrs. Hale.

The Court now having decided the contested designations of the parties' property will turn its attention to the

provisions of § 20-107.3, giving particular attention to the factors in subsection E.

During the marriage, both parties made equal contributions to the well being of the family. Both parties worked during the marriage, except for a short period in which Mrs. Hale remained home after the birth of their first child and for a short period when Mr. Hale was unemployed. The salary of each party was similar, and their joint salaries were utilized for living expenses and savings for the down payment on a home.

The marriage was of a short duration, from April 4, 1986, until their separation on October 24, 1988. Mrs. Hale is thirty-one and Mr. Hale is thirty-three, and both parties enjoy good health.

The marriage has been broken due to constant arguments between the parties. The difficulty having apparently manifested itself early in the marriage. The Court has previously discussed in detail its finding of no fault grounds in the dissolution of the marriage.

The marital property was generally purchased through the joint efforts of the parties. This property was purchased as needed and by the use of their salaries.

Other than the mortgage on the marital home, Mrs. Hale listed debts of $1,152.12 for counseling. Each party has a balance due on an automobile which has been designated as separate property.

Neither party presented any evidence of tax consequences, and the Court is of the opinion that due to the limited size of the marital property involved, any tax consequences which might arise would be minimal.

The Court having rejected plaintiff's claim to the marital home, the Court finds that each party should have a 50% share in the marital home. Since Mrs. Hale and the children are residing in the home, she should have the opportunity to purchase Mr. Hale's share should she be so advised. If not, the marital home should be sold promptly and the proceeds divided equally between the parties.

Based upon the documents presented to the Court at the hearing, Mrs. Hale has in her possession marital property valued at $2,194.00, and Mr. Hale has in his possession marital property valued at $6,350.00. Each party should retain the marital property which is in his or her possession. Since the Court finds that the

marital property was generally purchased with the joint funds of the parties, the marital property should be divided equally. To accomplish this, the defendant should pay to Mrs. Hale the sum of $2,078.00 to offset the difference in the amount of marital property in his possession.

In the Court's opinion each party contributed equally in acquiring the marital property, and each contributed equally in the marriage and its dissolution. Considering these matters and the factors in subsection E, the Court is of the opinion that no monetary award should be granted to either party.

The plaintiff has requested an award of attorney's fees. Having concluded that both parties are responsible for the dissolution of this marriage and further that both parties have comparable salaries, the Court will deny the request for an award of attorneys' fees.